(C.D. 4190)

PHARMACIA LABORATORIES, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 24, 1971)

*Serko & Sklaroff* (*Murray Sklaroff* and *David Serko* of counsel) for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Brian S. Goldstein* and *James Caffentzis*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: This protest places in issue the classification of certain merchandise imported from Sweden and invoiced as "SEPHADEX G–25 and G–50". The merchandise was classified as synthetic gum pursuant to paragraph 11 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108. Duty was assessed at the rate of 3.4 cents per pound plus 25½ per centum ad valorem.

Plaintiff claims classification alternatively as a chemical compound not specially provided for pursuant to paragraph 5 of the Tariff Act of 1930, as modified, supra, dutiable at 10½ per centum ad valorem; an ether not specially provided for pursuant to paragraph 37 of said act, as modified, *supra*, dutiable at 10½ per centum ad valorem; or a manufactured article not specially provided for pursuant to paragraph 1558 of said act, as modified by the Torquay Protocol, T.D. 52739, dutiable at the rate of 10 per centum ad valorem.

The relevant statutory provisions are as follows:

Classified under:

Paragraph 11, Tariff Act of 1930, as modified, *supra*:
Synthetic gums and resins not specially pro-
vided for:

Other _____ 3.4¢ per lb. and
25½ ad val.

Claimed under:

Paragraph 5, Tariff Act of 1930, as modified, *supra:*

All chemical elements, all chemical salts and
compounds, \* \* \* all the foregoing ob-
tained naturally or artificially and not
specially provided for \* \* \*_____ 10½% ad val.

Paragraph 37, Tariff Act of 1930, as modified, *supra:*

Ethers and esters not containing over 10 per
centum of alcohol:
\* \* \* [E]thers and esters of all kinds
not specially provided for_____ 10½% ad val.

Paragraph 1558, Tariff Act of 1930, as modified, *supra:*

Articles manufactured, in whole or in part,
not specially provided for \* \* \*_____ 10½% ad val.

As always, the presumption of correctness attaches to the collector's
classification. Plaintiff attempts to overcome this presumption and
prove that the importation does not conform to the meaning of gum
as contained in the Tariff Act of 1930. The testimony deals with the
nature of gums in general and the characteristics of Sephadex in par-
ticular and was presented cogently by two witnesses testifying on
behalf of the plaintiff and one witness testifying on behalf of the
defendant.

The witnesses for the plaintiff were Dr. Kirsti Granath and Dr.
Frederick R. Eirich. Defendant's witness was Martin Glicksman. We
note that the testimony of these witnesses in protest 66/9422 has
been incorporated herein and has been considered insofar as it relates
to the issues before the court.

The nature of Sephadex as it emerges from the testimony is as
follows: It is a substance formed by the reaction of the polysaccharide
dextran and epichlorohydrin. It has the appearance of fine white
grains of sand. In water and other solvents the grains of Sephadex
swell, that is to say, they admit water into their molecular network
without dissolving. As such, the grains of Sephadex form what can
best be described as a molecular sieve which is useful for separating
molecules of varying sizes. Unlike the everyday sieve, the Sephadex
allows larger molecules, too large to get trapped in the individual
Sephadex molecules, to pass through the network quickly. Smaller
molecules of a size more in keeping with the spaces in the Sephadex
molecule, get caught up and pass through more slowly. This occur-
rence allows the scientist to separate and measure molecules of dif-
ferent sizes.

The testimony is clear that while Sephadex is not soluble in water
its grains swell to a limited extent. It does not appear that Sephadex

acquires or produces a glutinous or viscous characteristic when it is introduced into water. In short, it does not become sticky or tacky. It is clear, however, that it does form a "gel" in water, which term we consider to mean a colloidal suspension of matter in a state of dispersal in a liquid which still maintains a coherent molecular structure.

The meaning of the term "gum" as used in the Tariff Act of 1930 is the focus of this case and the principal source of dispute between the parties. As regards the definition of the term "gum", the testimony supports the view that the term has only recently begun to be the subject of attempts at exact scientific definition. Involved in this case are the questions of whether a gum must be a substance soluble in water or merely "swellable" in water, whether if "swellability" suffices it must be unlimited swellability and, what characteristics must the substance exhibit in conjunction with water? Must it produce a "gummy", "tacky" or "sticky" effect or is it sufficient that it produce a so-called "gel"? Plaintiff claims that the gum envisioned by the Tariff Act of 1930 must be soluble in water or possess unlimited swellability and produce a tacky or gummy effect, none of which characteristics are possessed by the importation. Defendant claims that limited swellability and the formation of a gel or colloidal suspension suffices to bring the importation within the scope of the term gum.

A study of the lexicographic and scientific authorities, together with the available legislative history, leads us to conclude that a gum, as defined in the Tariff Act of 1930, may be a substance which is insoluble in water and exhibits limited swellability. It must, however, produce a "sticky", "tacky" or "gummy" effect in conjunction with water.

As regards solubility, it is sufficient to note that acknowledged true gums such as Tragacanth (given as a specific example in the discussion of gums in the Summary of Tariff Information of 1929 at page 2364) are not soluble in water.[1] Furthermore, numerous sources in addition to the above Summary of Tariff Information, refer to swellability and not strict solubility as a characteristic of gums. For example, gums have been referred to as either dissolving in water or taking up enough of that solvent to become glutinous;[2] as being completely soluble in water or altered by water so as to swell somewhat;[3] and as forming clear solution with water or swelling up in water to produce a glutinous mass.[4]

The Summary of Tariff Information of 1929 in addition to explicitly recognizing the possibility that gums may be insoluble in water

---

[1] See also the discussion of gum karaya and gum shiraz in the Encyclopedia of Chemical Technology, Volume 10, Kirk-Othmer (1951).

[2] Thorpe: Dictionary of Applied Chemistry, Volume 3, page 21 (1918).

[3] Hurst: Dictionary of Chemicals and Raw Products, page 165 (1901).

[4] Webster's New International Dictionary (1930).

assigns to these insoluble gums the characteristic of producing "mucilaginous colloidal suspensions in water." The relevant passage found at page 2364 of the Summary as set forth below, expresses concisely the scope of the term gum at that time.

> "Gums and resins" cover a wide variety of vegetable substances which exude from certain trees and shrubs. The varnish gums, for the most part natural or wound exudations of coniferous trees, are complex organic substances, amorphous, insoluble in water, and usually soluble in alcohol, ether, and volatile oils. These gums commonly occur in their natural state as oleo resins containing volatile oils. Some, such as kauri, are found in the fossil state. Gum resins such as myrrh, gamboge, and asafetida are naturally occurring compounds of true gums and resins, and are chiefly used in medicine. True gums are amorphous exudations, chemically allied to carbohydrates. They differ from varnish gums and gum resins in being water soluble, or in forming mucilaginous colloidal suspensions in water; e.g., tragacanth and kadaya. They are used as adhesives, as sizing agents, and in foods and pharmaceuticals. Damar, Kauri and copal are the most important imported gums.

We are persuaded by these authorities that a gum must exhibit a characteristic stickiness in combination with water. This appears to be a characteristic of gums which can be traced back to the days of antiquity [5] and a characteristic which we find embodied in the Tariff Act of 1930.

We are aware of the fact that tariff acts are drafted for the future in the sense that they are intended to embrace articles not in existence at the time of enactment. *Davies Turner & Co.* v. *United States*, 45 CCPA 39, C.A.D. 669 (1957). This rule, however, is predicated on the new article meeting the original definition of the term used in the tariff act. The definition remains a constant. The flexibility and forward-looking nature of the tariff act resides in the fact that the term defined includes forms of the article meeting that definition which did not exist at the time the statute was passed. Thus, if Sephadex met the definition of the term gum in the Tariff Act of 1930, we would have no difficulty in classifying it thereunder even though it did not exist in 1930. Since Sephadex, however, lacks one essential characteristic of gums, namely, stickiness, it is not comparable to an article which meets the definition of a statutory term but was unknown at the time the legislation was adopted. It simply does not possess the full characteristics of a gum.

Since plaintiff has successfully disproved the classification of Sephadex as a gum, it remains for it to prove the correct classification thereof. The testimony establishes that Sephadex is made by a number

---

[5] See, Encyclopedia of Chemical Technology, *supra,* Volume 7, page 328.

of steps which can be designated as a manufacturing process and that it is, as the end result of such a process, a manufactured commodity. In this respect, the rationale of *United States* v. *Shell Oil Co., Inc., et al.*, 44 CCPA 54, C.A.D. 637 (1957), governs. In that case a product known as "Teepol" which was the sodium salt of an alkyl sulfuric acid and was used principally as a detergent, was held properly classifiable pursuant to paragraph 1558 as a manufactured article not specially provided for. The Court of Customs and Patent Appeals decided that Teepol, in all its essential characteristics, was neither an ester nor a salt, and as a product distinct from either group could not be classified as a single chemical compound or mixture pursuant to paragraph 5 or as an ester classifiable pursuant to paragraph 37.

We are of the opinion that the instant importation is a complex molecule resulting from the cross-linking of dextran by epichlorohydrin. The testimony indicates that Sephadex is a conglomerate of mixtures of cross-linked dextran chains without a specific molecular weight and with complex ether linkages. Consequently, we find ourselves bound by the holding in *United States* v. *Shell Oil Co.*, *supra*, and precluded from regarding the importation as a chemical compound or as an ester.

In light of the above, we find that Sephadex is properly classifiable pursuant to paragraph 1558 of the Tariff Act of 1930, as modified, as a manufactured article, not specially provided for.

Judgment will issue accordingly.